Our next case of the morning is 118882, People of the State of Illinois v. Stanley McDonald. Are you ready to proceed? Apple, are you ready? Good morning. Deborah Noll from the Office of the State Appellate Defender, for the appellate, Stanley McDonald. May it please the Court, Counsel. It is well settled that jury instructions should be given so long as there is some slight evidence. It is also well settled that when a criminal defendant elects a jury trial, it is up to the jury and not the judge to decide what evidence to believe. Here, Stanley McDonald chose a jury trial. But the trial court usurped the jury's role by denying defense-requested lesser-offense instructions based on its own determination that McDonald intentionally killed his lover, Larry Gladney. The appellate court then compounded the error by affirming, despite recognizing some evidence of recklessness and some evidence that McDonald did not intend to kill Gladney before the stabbing. This court should reverse and remand for a new trial because this case demonstrates the ways in which the lower courts are misapplying this court's precedent. First, the standard of review. Just over four years ago in People v. Washington, this court very clearly stated that, quote, the question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to de novo review, close quote. De novo review is correct because, as thoroughly explained in the Fourth District Appellate Court's decision in Willett recently, quote, any standard that purports to give the court discretion to decide what the evidence does or does not show invites the court to substitute its own credibility determination without the jury. In so doing, the court short-circuits the defendant's right to have his guilt or innocence on all applicable charges determined by a jury of his peers, close quote. Based on what happened in this case, where the appellate court relied on prior decisions from this court that used deferential language, this court needs to reiterate that it meant what it said in Washington and hold that the question of whether some evidence exists in the record to support the giving of a jury instruction is a question of law subject to de novo review. This court should also clarify that a trial court necessarily abuses its discretion in denying instructions where some evidence exists. Or, I recommend to eliminate the possibility of future confusion, this court take it one step further and hold that a trial court's denial of defense-tendered lesser offense instructions is always subject to de novo review. Turning to the merits, the appellate court erred in this case, I'm sorry, both courts erred in this case because there was some evidence to support both involuntary manslaughter and the provocation theory of second-degree murder instructions. The only evidence about how this fight started is that Gladney may have punched McDonald. McDonald had a split lip, scraped knees, and a sore neck. Both men, who were similarly sized, were quite intoxicated. Additionally, Gladney was high on cocaine, and there's evidence that after the offense, he was very combative, so that in the ambulance he broke out of, he had to be put in restraints, also the emergency room. And there's testimony that his combativeness could have been caused by the substances he ingested, which would show that he was combative before the incident took place. Also, contrary to the state's argument, the wounds in this case were actually quite superficial. The two cuts on his body were very superficial. And then, as the appellate court recognized, the wound to the face was actually some evidence of recklessness, given the medical examiner's testimony that, one, aiming for the carotid artery would not go for the cheek. And afterward, McDonald was very upset. He was calling out for help. He was begging Gladney not to die. So, based on all of this evidence, the jury should have been instructed on both involuntary manslaughter and the provocation theory of second-degree murder, because they could well have found that the stabbing was either reckless, or that Gladney entered willingly into combat, knowing that McDonald had a knife. Despite its recognition of some evidence of recklessness, the appellate court held that involuntary manslaughter instructions were precluded as a matter of law because McDonald intentionally stabbed Gladney. This was error for two reasons. First, even if the stabbing was intentional, an intentional stabbing does not preclude involuntary manslaughter instructions under this court's decisions in DiVincenzo and People v. Whiters. A person commits involuntary manslaughter when he performs acts that are likely to cause death or great bodily harm to another, and he performs these acts recklessly. Recklessness is a conscious disregard of a substantial and unjustifiable risk that actions will cause death or great bodily harm. This stands in contrast to first-degree murder, which requires intent to kill or knowing that your acts create a strong probability of death or great bodily harm. So here, even if there is an intentional stabbing, it is well settled that a defendant may act recklessly where he commits deliberate acts but disregards the risks of those behaviors. So in order to affirm the appellate court on this basis, this court would have to reverse its decisions in DiVincenzo and Whiters. But second, whether the stabbing was intentional or not was a question of fact for the jury to decide. The appellate court erred by accepting the trial court's finding on this, which is in turn erroneous. So based on all of this evidence, the jury should have been instructed on involuntary manslaughter. So are you saying in every case, the question of whether there's sufficient evidence to give a lesser included should be a de novo review? Yes, Your Honor. And overrule all the cases that we have that set abusive discretion? I don't think it would require overruling those cases. I think it's more a matter of clarifying the way that this court's jurisprudence has evolved on the standard of review. It's been, I can't remember the time frame, but I think only within the past 20 years has it become a focus. And it seems that it's become more and more refined. And so I think that the discretionary language is almost a holdover from that time before this court became really attentive to how important the standard of review is. And when you look at the substance of this court's decisions, as I went into quite a lot of detail in both of my briefs, particularly the reply brief, it's clear that even when this court used discretionary language, it actually was applying a de novo standard. It was looking independently at all the facts. And that makes sense because it's a question of fact for the jury whether there was some conflicting evidence. When there's anything that needs to be believed or disbelieved or sorted through, that's always for the jury to decide. So it doesn't make sense to defer to the trial court because there's nothing to defer to when it's done properly. Clarification in this area is probably a good word, but what about the other side that would seem to indicate that the trial court is in the best position to assess the evidence? And then perhaps de novo review would then apply to a trial court's decision concerning instructions that are mandatory counterparts to instructions that are given.  The trial court's role in a jury trial is to decide what evidence is admissible. And I think that's the key. That's how the word credible comes in as best as I can determine because whether the evidence is admissible is a separate question from whether it's believable. So whenever there's a question of fact where people might disagree, that's always going to be up to the jury to decide. So while the trial court, yes, is the only one in a position to decide what evidence is admissible, he's in no better position than this court when it comes to deciding what evidence is believable. So as long as some admissible evidence is introduced that creates some question of fact from which the jury might find a lesser offense, then there's no reason to give discretion to the trial court. Does that answer your question? We've used the terms, I think, at different times. Some evidence, sufficient evidence, credible evidence. So if it's admissible, even though it's incredible, the trial court is required to give an instruction. Yes, Your Honor. I think that's the most basic function of a jury is to search for truth. So I think at every trial, there's always going to be... I mean, it's always a question of credibility. So once we have all the messy facts introduced at trial, then it becomes up to the jury to sift through and decide who and what to believe. So even if the trial court determines that the evidence is incredible and therefore says that's not evidence, there's not some evidence or sufficient evidence, he or she cannot refuse an instruction. Correct. There's actually a great quote in People v. Ouellette, and it's from a very old United States Supreme Court case, Stevenson v. United States. It appears in paragraph 89 of Ouellette. And I'm going to read you the entire quote because it's exactly relevant to what you're talking about. A judge may be entirely satisfied from the whole evidence in the case that the person doing the killing was actuated by malice, that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice. And yet, if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to determine from all the evidence what the condition of mind was and to say whether the crime was murder or manslaughter. So this is a longstanding, fundamental principle of jury trials, that when there's some conflicting evidence, it doesn't really matter what the trial court believes, it matters what the jurors believe. So therefore, the jury needs to be given this tool to decide all possible theories of defense so long as there was some invisible evidence to support them, which here there was. There also was some evidence of second-degree... I'm sorry, provocation theory of second-degree murder because a properly instructed jury may well have found that Gladney willingly entered into combat knowing that McDonald had a knife. Here, the appellate court recognized some evidence of this where they said that they recognized the possibility that McDonald did not form the intent to kill Gladney before the stabbing occurred. But this court held that instructions were precluded as a matter of law because of this court's decision in People v. Austin. And that was an error because, as an initial matter, the nature of the injuries is not such as to automatically preclude instructions where the knife wounds were superficial and the medical examiner testified that the fatal wound was more the result of misfortune than it was intention. But also, in Austin, the evidence affirmatively demonstrated that the decedent did not willingly enter into combat. So here, we have a question of fact where no one witnessed the start of the incident. There's some evidence that Gladney punched McDonald to start it. And we have all of these surrounding facts. We have their history. These two men, same size, were in a romantic relationship for some time. They had a tumultuous relationship that did involve violence. So there's no one to say that Gladney didn't willingly enter into combat with McDonald knowing that McDonald was armed, and therefore this case is nothing like Austin. Instead, this case is more like Leonard because no one saw what started at the beginning. It should have been up to the jury to decide what happened. But even assuming that, I mean, in this case, the evidence was that at best he did slap him or something, and he responded with a knife. Is that right? We don't really know exactly what happened. We know that... Don't we know the victim was unarmed? We know the victim was unarmed, but we don't know what. We know that McDonald had a knife, but we don't know the way in which he used the knife. So we know that the two men were... We know the fight started at the bottom of the stairwell because there was blood splatter evidence that said that it started at the bottom of the stairwell. We have some evidence that Gladney may have punched McDonald. We know that McDonald had a knife. We know that the two men were struggling over this bike. But we don't know, and now I'm speculating, but I'm speculating based on the evidence. It's possible that Gladney punched McDonald, that McDonald reacted, not thinking about the fact that he had a knife, but then realizing he had the knife, either, well, first, recklessly, he could have just reacted not even knowing he had the knife, and these wounds could have been inflicted because he happened to have a knife when he reacted, or he could have formed the intent in the heat of the battle. Oh, I have this knife. I'm going to stab you. There is some evidence in which a jury could have found that, and either of those scenarios are recklessness or second-degree provocation. And again, as I said throughout my briefs, this isn't a reasonable doubt case. This is a case about jury instructions. This is a case about there was some evidence from which the jury could have found these lesser offenses, so the jury should have been instructed. McDonald chose a jury trial. It was up to the jury to decide. Did the defendant tell Davis that he was going to get Gladdy and that he was going to hurt him and that he was going to kill him? He did, and Davis said that she didn't believe it would really happen. So again, this is some evidence. I did not raise the reasonable doubt argument for obvious reasons, but that was some evidence that the jury should have been entitled to decide what happened. Not the trial judge, not the appellate court, and frankly not this court. It should be the jury. Is there a difference between some evidence and inferences that can be drawn from the evidence? For example, the possibilities that you laid out for us. You said this is what we know, this is the fact, the evidence. But you could draw this inference, you could draw that inference. The way we speak of it, though, is what was the actual evidence? It was the knife, the injuries, those kind of things. So you're saying that the trial court needs to weigh what possible inferences could be drawn from the evidence that is in fact admitted? No, Your Honor. I'm saying that the standard is that lesser offense instructions should be some slight evidence that may support them. So therefore, if there is some slight evidence, I mean here the trial court found that the evidence of the punch was some slight evidence to justify self-defense instructions. So the trial court, I think, didn't believe that but still recognized its duty to give those instructions. I think part of the problem here was the trial court also relied on this court's decisions in Austin to, and also the discretionary review standards, to think that it had more power than it actually had. So I don't know if that's answering your question. I mean, if there is some evidence from which inferences may be drawn, then the instructions should be given. Does that answer your question? Correct. So in the analysis of instructions being given in this context, the words sufficiency of the evidence have no meaning at all. Sufficiency means some. Yes. Even slight. Yes. All right. And back to, I think Justice Carmer talked about the different nuances of the language. So the trial judge, the appellate court, no one at that point looks at the sufficiency of the evidence. They look at whether there's the slightest until of evidence, and then the instruction has to be given. Yes. So why do we use the term sufficiency? There is no sufficiency. There's just some insufficiency. Well, sufficiency is the opposite of none. So if there's no evidence, then that's clear. But if there's some evidence, that is if some slight equates with sufficient in this context. At the end of the day, the core of the right to be tried by a jury is the understanding that the jury might weigh evidence and assess credibility differently than trial judges. In this case, both the trial court and the appellate court overlooked this fundamental principle. This court should, therefore, reverse the lower courts, reiterate and clarify that the standard of review is de novo, and remand for a new trial in which the jury is properly instructed on involuntary manslaughter and the provocation theory of second degree murder. Thank you. Thank you. Good morning, Your Honors. May it please the court. Assistant State's Attorney Heather Farr and Krogh on behalf of the people. Your Honors, this defendant held a knife in his hands for an entire day and said to everyone who was in the house that day, I'm going to kill Larry when Larry gets home. And that's exactly what this defendant did. He was the only person with a deadly weapon. The knife never left his hands. There was no struggle for this knife. In fact, the victim had no defensive wounds. Three stab wounds to this victim is not reckless conduct. In this case, the trial court found there was a scintilla of evidence for self-defense, that based on these very minor injuries to defendant, maybe the jury could find that he was acting in self-defense and gave the defendant the benefit of the trial court's discretion, gave the defendant this gift of self-defense and the mandatory counterpart, the unreasonable belief in self-defense, second-degree murder. However, the trial court found there was absolutely no evidence to support involuntary manslaughter or second-degree murder provocation. The court made lengthy findings that the evidence was uncontradicted, unrebutted. In fact, overwhelming that there was one weapon and it never left the defendant's hands. And based on that, the jury did not receive those instructions because there was no evidence. And the appellate court, recognizing the trial court's discretion, affirmed that. How do you reconcile that first finding, that there was sufficient evidence of a punch to justify a self-defense instruction, but that that same evidence was not sufficient to support these other instructions? Because, Your Honor, for involuntary manslaughter, in order to show reckless conduct, the trial court made these findings and the appellate court made the same findings, there would have to be some sort of reckless behavior. And stabbing someone three times is not reckless behavior. The type of stab wounds in this case indicate that this is not reckless behavior, that these were not slashing out with a knife. The knife was used in a downward motion to cause the injuries to the victim. So the injury issue is what turns the... whether there's sufficient evidence for recklessness. The injury is what turns... what shows that there's no evidence for involuntary manslaughter and second-degree provocation and the fact that there was one weapon and the fact that there was no struggle over it. The case that the counsel discussed, Leonard, involved two men struggling over a gun. There was no struggle over the knife here. In fact, there's not a single case that counsel has relied on where a defendant held a knife in his hands all day, stating his intent to kill the victim, and then there was no struggle for that knife. There's no case that supports her argument. That's simply murder. In this case, the jury got the benefit of... or the defendant got the benefit of having the jury instructed on self-defense and second-degree unreasonable belief in self-defense. And the trial court, in using this discretion, that the standard here is abusive discretion, because as this court has always recognized, the trial court has a unique role and stands in this unique position hearing all of the evidence and looking at the totality of the circumstances in determining whether there is some slight credible evidence. Otherwise, the jury could receive every instruction the defendant asked for. In fact, in the case Everett, this court held that the trial court should be worried not to allow a jury to be instructed on every theory that a defendant asked the jury to be instructed on. That's the trial court's most important and unique function, and this court has repeatedly recognized that and given deference to the trial court's determinations. This issue of credibility is exactly what the trial court is to decide in the totality of the circumstances of what's going on in that courtroom, hearing and observing witnesses testify. In People v. Jones, the defendant gave multiple contradicting statements in court, before court. It's the trial court's role to do its job so that the jury can then do their job properly instructed, and this court has recognized that repeatedly, historically, that that is the standard of review, and for good reason. And in those cases that counsel relies on, Everett, Washington, and Lockett, they did nothing to change this deferential standard of review. Those cases applied only to when second-degree murder, when second-degree unreasonable belief in self-defense is the mandatory counterpart to self-defense. This court made that very clear, that that's when a de novo review comes into play, because the trial court is no longer using its discretion at that point. That's an issue of law. So those cases did nothing to change the historical deference accorded to the trial court. And in this case, the appellate court did it exactly right. The appellate court reviewed the evidence with an eye toward deference of what the trial court found, stating that maybe a different trial court or a different court could see things differently, but relying on the trial court's unique role in hearing and observing the evidence and affirming with that abuse of discretion standard. Your Honors, if there are no further questions, I will conclude. In this case, the trial court properly used its discretion and found that there was absolutely no evidence to support involuntary manslaughter or second-degree murder provocation. And the appellate court correctly applied the abuse of discretion standard and affirmed. We ask this court to affirm the first-degree murder conviction of defendant for the murder of Lawrence Gladney. Thank you very much. I do have one question. I note that at some point the trial court said that with regard to giving an instruction on provocation, the evidence was very, very, very sketchy, where no witnesses saw how the fight started, and there was conflicting evidence regarding whether the victim punched the defendant. Is that some evidence? Is that sufficient evidence? Is that credible evidence? When the trial court said it was very, very, very sketchy, that it did not even rise to the very low standard of a scintilla of evidence shows it wasn't enough. I mean, the trial court gave self-defense based on skin knees. The defendant is holding the weapon all day long, and yet the jury got a self-defense instruction based on that. So the court, I think, was the trial court, was making it clear for the reviewing court that there was simply nothing to support that. No, the court found that there was something enough to give the self-defense instruction. So the court did make some, based on all the evidence and the testimony and observing their demeanor, et cetera, the court did find that there was some evidence that the defendant may have had the right to defend himself. The trial court's exact words were the jury might be able to find, based on this, that there was something. Yes, correct, Your Honor. Is it the face punch or the knees? The punch the counsel refers to in her briefs and here today in her argument was testimony of Charlotte Davis before the grand jury where she was asked about how the fight began and said that Larry may have punched out, and the rest of that quote is, but what good did it do because the defendant was holding the knife. So it's true we don't know what happened at the beginning when Larry first came home with his bicycle, but the absence of evidence is not evidence. There was no evidence that these men were in a fight. In fact, the evidence was that it happened very quickly. The fact that Larry had no defensive wounds shows this happened very quickly. There wasn't a fight going on and then the defendant grabbed the knife. He was holding the knife, pulling the bicycle away, and he stabbed the victim three times. So for self-defense or for second-degree murder provocation to prove mutual combat, this court held in Austin, which is absolutely dispositive of this case, that there has to be mutual. And when one person has a deadly weapon and one person is unarmed, it's not an even fight. It's not a mutual fight. And even if there had been a punch, even if there had been some start of this fight with a punch, the reaction of the defendant is completely out of proportion. And this court has held that in that case, it is not mutual combat. And therefore, there was no evidence to support that instruction, Your Honor. Thank you very much. Thank you. This case does not involve an absence of evidence. We have some evidence from Charlotte Davis, who knew this couple very well, that she thought that it might have started with a punch. She may have seen, she may have not. But also that she did not believe what McDonald said when he was saying, oh, damn, I'm going to kill them. She didn't believe it would really happen because she knew these people. She knew their history. All of this combined with the fact that, as Counsel said, no one really knows exactly what happened. We don't know if there was a struggle. It's exactly the kind of situation that we have a jury trial. We have a jury trial to sort out all of this evidence, which I won't bore you with again. You have it in the briefs. I've said it a couple of times already. But there was enough evidence here from which the jury, a properly instructed jury, might have found McDonald guilty of a lesser offense of involuntary manslaughter or the second-degree theory of provocation. And because he elected a jury trial, it should have been up to the jury to decide. I'm not asking this court to hold that. I'm just asking for the jury to be given the opportunity. And regarding the evidence of recklessness, the appellate court itself found the injury to the cheat to be some evidence of recklessness. And regarding People v. Jones, in that case, there was no evidence because the defendant's statement showed that there was no physical contact, and therefore his theory of defense could not have been true. There was no evidence to support it. And finally, in People v. Washington, this court did not limit its standard of review. I believe this court was trying to clarify the years of use of deferential language. It didn't explain. So I think it now should provide that explanation so that the lower courts understand that it actually is. No vote this court met what it said. And I think that's all I have. Do you have any more questions? It doesn't appear so, counsel. Thank you. Case number 118882, People of the State of Illinois v. Stanley McDonald, will be taken under advisement as agenda number three. Ms. Knoll and Ms. Van Togden, thank you for your arguments this morning. You're both excused at this time.